| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| XAVIER BECERRA<br>Attorney General of California<br>TANIA M. IBANEZ<br>Senior Assistant Attorney General<br>ALICIA BERRY (SBN 228367)<br>300 South Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>Tel. 213.269.6550 / fax. 213.897.7605<br>alicia.berry@doj.ca.gov | **FILED**<br>CLERK, U.S. DISTRICT COURT<br>**JAN - 7 2019**<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ____RS____ DEPUTY<br><br>2:19-CV-00133-DMG |
| ☐ *Individual appearing without attorney*<br>☒ *Attorney for:* Xavier Becerra, CA Attorney General | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>VERITY HEALTH SYSTEM OF CALIFORNIA, INC. et al.,<br><br><div align="right">Debtor(s).</div> | CASE NO.:2:18-bk-20151-ER<br><br>ADVERSARY NO.:<br>(*if applicable*)<br><br>CHAPTER: 11 |
|---|---|
| <div align="right">Plaintiff(s) (*if applicable*).</div><br>vs.<br><br><br><br><div align="right">Defendant(s) (*if applicable*).</div> | **NOTICE OF APPEAL**<br>**AND STATEMENT OF ELECTION** |

**Part 1:  Identify the appellant(s)**

1.  Name(s) of appellant(s):  Xavier Becerra, California Attorney General

2.  Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.
☐ Plaintiff
☐ Defendant
☐ Other (*describe*):

For appeals in a bankruptcy case and not in an  adversary proceeding.
☐ Debtor
☐ Creditor
☐ Trustee
☒ Other (*describe*): Xavier Becerra, California Attorney General

## Part 2:  Identify the subject of this appeal

1. Describe the judgment, order, or decree appealed from:
   Order re Sale of Certain of the Debtors' Assets to Santa Clara County Free and Clear filed December 27,
   2018 [Docket No. 1153]; and Memo of Decision Overruling Objections of the California Attorney General
   to the Debtors' Sale Motion filed December 26, 2018 [Docket No. 1146].
2. The date the judgment, order, or decree was entered:  12/27/2018

## Part 3:  Identify the other parties to the appeal

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone
numbers of their attorneys (*attach additional pages if necessary*):

1. Party:  Debtors, Verity Health System of California, et al.

   Attorney:

   SAMUEL R. MAIZEL (Bar No. 189301), samuel.maizel@dentons.com
   JOHN A. MOE, II (Bar No. 066893), john.moe@dentons.com
   TANIA M. MOYRON (Bar No. 235736), tania.moyron@dentons.com
   DENTONS US LLP
   601 South Figueroa Street, Suite 2500, Los Angeles, California 90017-5704
   Tel: (213) 623-9300 / Fax: (213) 623-9924

2. Party: County of Santa Clara

   Attorney:

   GREGORY JONES (Bar No. 229858), gjones@mwe.com
   McDermott Will & Emery
   2049 Century Park East, Suite 3800, Los Angeles, CA 90067-3218, Tel:(310) 284-6140
   JAMES KAPP, jkapp@mwe.com, McDermott Will & Emery
   444 West Lake St Ste 4000, Chicago, IL  60606, Tel: (312) 372-2000

## Part 4:  Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal
unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court.  If
an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below.  Do not
check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☒ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy
   Appellate Panel.

## Part 5:  Sign below

 /s/ Alicia Berry                                                            Date:  01/07/2019
Signature of attorney for appellant(s) (or appellant(s)
if not represented by an attorney)

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in
§ 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

**[Note to inmate filers:** If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P.
8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of
Appeal.]

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

300 S. Spring Street, Suite 1702, Los Angeles, CA 90013

A true and correct copy of the foregoing document entitled: **NOTICE OF APPEAL AND STATEMENT OF ELECTION**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 01/07/2019 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 01/07/2019 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 1/7/2019 | Jane Miyamura | /s/ Jane Miyamura |
| *Date* | *Printed Name* | *Signature* |

# Verity Health Systems of California, Inc.

### Current Service List

| | |
|---|---|
| SAM J. ALBERTS<br>**DENTONS US LLP**<br>1900 K Street NW<br>Washington, DC 20006 | DANIEL S. BLECK<br>**MINTZ, LEVIN, ET AL.**<br>One Financial Center<br>Boston, MA 02111 |
| MARGARET M. ANDERSON<br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>200 West Madison St.<br>Chicago, IL 60606 | MONICA A BLUT<br>**DEMIDCHIK LAW FIRM**<br>923 E. Valley Blvd., Suite 268<br>San Gabriel, CA 91776 |
| **ASAHI INTECC USA INC**<br>2500 Red Hill Ave.<br>Suite 210<br>Santa Ana, CA 92705 | **CAIN BROTHERS**<br>601 California Street, Suite 1505<br>San Francisco, CA 94108 |
| **BDO USA, LLP, A CALIFORNIA CORPORATION**<br>1888 Century Park East, 4th Floor<br>Los Angeles, CA 90067 | SCHUYLER CARROLL<br>**PERKINS COIE, LLP**<br>30 Rockefeller Plaza, Floor 22<br>New York, NY 10112-0085 |
| Brent F Basilico<br>**SELLAR HAZARD & LUCCIA**<br>201 North Civic Drive, Suite 145<br>Walnut Creek,CA 94596 | **COCHLEAR CORPORATION**<br>13059 E Peakview Ave<br>Englewood, CO 80111 |
| **BERKELEY RESEARCH GROUP LLC**<br>550 S. Hope Street<br>Suite 2150<br>Los Angeles, CA 90071 | NATHAN F. COCO<br>**MCDERMOTT WILL & EMERY**<br>444 West Lake Street<br>Chicago, IL 60606-0029 |
| **SCOTT E. BLAKELEY**<br>18500 Von Karman Ave.<br>Suite 530<br>Irvine, CA 92612 | **DENTONS US LLP**<br>601 South Figueroa Street<br>Suite 2500<br>Los Angeles, CA 90025 |

| | |
|---|---|
| **ECOLAB INSTITUTIONAL**<br>655 Loan Oak Drive<br>Eagan, MN  55121 | DONALD R. KIRK<br>**CARLTON FIELDS JORDEN BURT, P.A.**<br>4221 W Boy Scout Blvd., Suite 1000<br>Tampa, FL 33607-5780 |
| REFUGIO ESTRADA<br>**c/o KATZ LAW, APC**<br>11620 Wilshire Blvd. #900<br>Los Angeles, CA  90025 | **MEDTRONIC USA, INC**<br>Doral Corporate Centre II<br>3750 NW 87th Ave, Suite 700<br>Miami, FL  33178 |
| **SHAWN C. GROFF**<br>1330 Broadway, Suite 1450<br>Oakland, CA  94612 | **MILBANK, TWEED, HADLEY & MCCLOY**<br>2029 Century Park East, 33rd Floor<br>Los Angeles, CA  90067 |
| IAN A. HAMMEL<br>**MINTZ LEVIN COHN FERRIS, GLOVSKY & POPEO**<br>One Financial Center<br>Boston, MA 02111 | CLAUDE D. MONTGOMERY.<br>**DENTONS US LLP**<br>1221 Avenue of the Americas<br>New York, NY  10020-1001 |
| MELISSA W. JONES<br>**WALLER LANSDEN DORTCH & DAVIS, LLP**<br>511 Union St., Suite 2700<br>Nashville, TN 37219 | KEVIN MORSE<br>**Saul Ewing Arnstein & Lehr**<br>161 North Clark Street, Suite 4200<br>Chicago, IL  60601 |
| GREGORY KADEN<br>**GOULSTON & STORRS PC**<br>400 Atlantic Ave.<br>Boston, MA  02110 | **NFS LEASING INC.**<br>**DEVANEY PATE MORRIS & CAMERON LLP**<br>c/o LESLEY A. RIIS<br>402 W. Broadway, Suite 130<br>San Diego, CA  92101 |
| **JAMES KAPP**<br>444 West Lake St., Suite 4000<br>Chicago, IL  60606-0029 | JOHN R. O'KEEFE, JR.<br>**METZ LEWIS BRODMAN MUST O'KEEFE LLC**<br>535 Smithfield St., Suite 800<br>Pittsburgh, PA  15222 |

| | |
|---|---|
| JIMMY D. PARRISH<br>**BAKER HOSTETLER**<br>200 S. Orange Ave., Suite 2300<br>Orlando, FL 32801 | CHRISTOPHER RIVAS<br>**REED SMITH**<br>355 South Grand Ave., Suite 2900<br>Los Angeles, CA 90071 |
| LISA M. PETERS<br>**KUTAK ROCK LLP**<br>1650 Farnam St.<br>Omaha, NE 68102-2186 | **BENJAMIN ROSENBLUM**<br>250 Vesey St.<br>New York, NY 10281 |
| DAVID M. POWLEN<br>**BARNES & THORNBURG LLP**<br>1000 N. West Street, Suite 1500<br>Wilmington, DE 19801-1050 | SCOTT SCHOEFFEL<br>**THEODORA ORINGHER PC**<br>535 Anton Blvd., 9th Floor<br>Costa Mesa, CA 92626-7109 |
| MEGAN PREUSKER<br>**MCDERMOTT WILL & EMERY**<br>440 West Lake Street<br>Chicago, IL 60606-0029 | RYAN SCHULTZ<br>**FOX SWIBEL LEVIN & CARROLL LLP**<br>200 W. Madison Street<br>Suite 3000<br>Chicago, IL 60606 |
| RACHEL C. QUIMBY<br>**DAGLIAN LAW GROUP APLC**<br>701 N. Brand Blvd., Suite 610<br>Glendale, CA 91203 | MOLLIE SIMONS<br>**LEONARD CARDER, LLP**<br>1330 Broadway, Suite 1450<br>Oakland, CA 94612 |
| JASON REED<br>**MASLON LLP**<br>3300 Wells Fargo Center<br>90 S Seventh St<br>Minneapolis, MN 55402 | SODEXO, INC<br>**JD THOMPSON LAW**<br>c/o JUDY D THOMPSON ESQ<br>P.O. Box 33127<br>Charlotte, NC 28233 |
| PAUL J. RICOTTA<br>**MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO**<br>Chrysler Center<br>666 Third Ave<br>New York, NY 10017 | **MICHAEL A. SWEET**<br>345 California St., Suite 2200<br>San Francisco, CA 94104 |

| | |
|---|---|
| PHILLIP G. VERMONT<br>**RANDICK O'DEA & TOOLIATOS LLP**<br>5000 Hopyard Rd., Suite 225<br>Pleasanton, CA 94588 | |
| WILLIAM P. WASSWEILER<br>**BALLARD SPAHR LLP**<br>80 S. Eighth St., Suite 2000<br>Minneapolis, MN 55402 | |
| CLARK WHITMORE<br>**MASON LLP**<br>3300 Wells Fargo Center<br>90 S. 7th Street<br>Minneapolis, MN 55402 | |
| JADE M. WILLIAMS<br>**DLA PIPER LLP US**<br>444 W. Lake St., Suite 900<br>Chicago, IL 60606-0089 | |
| SAMUEL C. WISOTZKEY<br>**KOHNER, MANN & KAILAS SC**<br>4650 N. Port Washington<br>Milwaukee, WI 53212-1077 | |
| JOHN RYAN YANT<br>**CARLTON FIELDS JORDEN BURT, P.A.**<br>4221 W. Boy Scout Blvd., Suite 1000<br>Tampa, FL 33607-5780 | |
| FLORENCE ZABALA<br>**c/o POLIS & ASSOCIATES, APLC**<br>19800 MacArthur Blvd., Suite 1000<br>Irvine, CA 92612 | |
| MARIA ZAVALA<br>**c/o POLIS & ASSOCIATES**<br>19800 MacArthur Blvd., Suite 1000<br>Irvine, CA 92612 | |



FILED & ENTERED

DEC 26 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: Verity Health System of California, Inc., *et al.*, | Lead Case No.: 2:18-bk-20151-ER |
| Debtors and Debtors in Possession. | Chapter: 11 |

☒ Affects All Debtors

☐ Affects Verity Health System of California, Inc.
☐ Affects O'Connor Hospital
☐ Affects Saint Louise Regional Hospital
☐ Affects St. Francis Medical Center
☐ Affects St. Vincent Medical Center
☐ Affects Seton Medical Center
☐ Affects O'Connor Hospital Foundation
☐ Affects Saint Louise Regional Hospital Foundation
☐ Affects St. Francis Medical Center of Lynwood Medical Foundation
☐ Affects St. Vincent Foundation
☐ Affects St. Vincent Dialysis Center, Inc.
☐ Affects Seton Medical Center Foundation
☐ Affects Verity Business Services
☐ Affects Verity Medical Foundation
☐ Affects Verity Holdings, LLC
☐ Affects De Paul Ventures, LLC
☐ Affects De Paul Ventures - San Jose Dialysis, LLC

Debtors and Debtors in Possession.,

**MEMORANDUM OF DECISION OVERRULING OBJECTIONS OF THE CALIFORNIA ATTORNEY GENERAL TO THE DEBTORS' SALE MOTION**

Jointly Administered With:
 Case No. 2:18-bk-20162-ER;
 Case No. 2:18-bk-20163-ER;
 Case No. 2:18-bk-20164-ER;
 Case No. 2:18-bk-20165-ER;
 Case No. 2:18-bk-20167-ER;
 Case No. 2:18-bk-20168-ER;
 Case No. 2:18-bk-20169-ER;
 Case No. 2:18-bk-20171-ER;
 Case No. 2:18-bk-20172-ER;
 Case No. 2:18-bk-20173-ER;
 Case No. 2:18-bk-20175-ER;
 Case No. 2:18-bk-20176-ER;
 Case No. 2:18-bk-20178-ER;
 Case No. 2:18-bk-20179-ER;
 Case No. 2:18-bk-20180-ER;
 Case No. 2:18-bk-20181-ER;

Chapter 11 Cases.

| | |
|---|---|
| Date: | December 19, 2018 |
| Time: | 10:00 a.m. |
| Location: | Ctrm. 1568 |
| | Roybal Federal Building |
| | 255 East Temple Street |
| | Los Angeles, CA 90012 |

To adjudicate objections asserted by the California Attorney General (the "Attorney General") to the Debtors' motion for authorization to sell Saint Louise Regional Hospital ("St. Louise") and O'Connor Hospital ("O'Connor," and together with St. Louise, the "Hospitals") to the County of Santa Clara ("Santa Clara"), the Court ordered the Debtors, the Attorney General, Santa Clara, and the Official Committee of Unsecured Creditors (the "Committee") to respond to the Court's *Preliminary Findings and Conclusions* (the "Preliminary Findings").[1] In the Preliminary Findings, the Court stated that it intended to authorize the Debtors to sell the Hospitals to Santa Clara, free and clear of certain conditions imposed by the Attorney General in connection with a 2015 restructuring transaction, pursuant to §363(f)(1).[2] Having reviewed the briefing submitted in response to the Court's order,[3] the Court maintains its Preliminary Findings, and for the reasons set forth below will authorize the Debtors to sell the Hospitals free and clear of the conditions imposed by the Attorney General in connection with the 2015 restructuring transaction.

## I. Background

On August 31, 2018 (the "Petition Date"), Verity Health Systems of California ("VHS") and certain of its subsidiaries (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On August 31, 2018, the Court entered an order granting the Debtors' motion for joint administration of the Debtors' Chapter 11 cases.[4]

On October 31, 2018, the Court entered an order establishing auction procedures for the sale of the Hospitals (the "Bidding Procedures Order," and the motion for entry of the Bidding

---

[1] *See* Order Providing Notice of the Court's Intent to Authorize the Debtors to Sell Hospitals Free and Clear of the 2015 Conditions Asserted by the California Attorney General [Doc. No. 1125] (the "Briefing Order").

[2] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

[3] The following papers were submitted in response to the Briefing Order:

1) County of Santa Clara's Response to Order Providing Notice of the Court's Intent to Authorize the Debtors to Sell Hospitals Free and Clear of the 2015 Conditions Asserted by the California Attorney General [Doc. No. 1136];

2) Official Committee of Unsecured Creditors' Response to the Court's Order Providing Notice of the Court's Intent to Authorize the Debtors to Sell Hospitals Free and Clear of the 2015 Conditions Asserted by the California Attorney General [Doc. No. 1137];

3) Debtors' Response to Order Providing Notice of the Court's Intent to Authorize the Debtors to Sell Hospitals Free and Clear of the 2015 Conditions Asserted by the California Attorney General [Doc. No. 1139];

4) Attorney General Response to the Court's Preliminary Findings and Conclusions Re: Court's Order Providing Notice of the Court's Intent to Authorize the Debtors to Sell Hospitals Free and Clear of the 2015 Conditions Asserted by the California Attorney General [Doc. No. 1140];

   a) Notice of Errata Re: Attorney General's Response Filed on December 24, 2018 [Doc. No. 1144];

5) Declaration of Douglas M. Press in Response to the Filing by the California Attorney General [Docket No. 1140] and in Support of Entry of the Order (1) Approving Sale of Certain Assets to Santa Clara County Free and Clear of All Encumbrances; (2) Approving of Debtors' Assumption and Assignment of Certain Unexpired Leases and Executory Contracts and Determining Cure Amounts and Approving of Debtors' Rejection of Those Unexpired Leases and Executory Contracts Which Are Not Assumed and Assigned; (3) Waiving the 14-day Stay Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d); and (4) Granting Related Relief [Doc. No. 1141] (the "Press Decl.").

[4] Doc. No. 17.

Procedures Order, the "Bidding Procedures Motion").[5] Pursuant to an Asset Purchase Agreement (the "APA")[6] dated October 1, 2018, Santa Clara was designated as the stalking horse bidder (the "Stalking Horse Bidder"). The Bidding Procedures Order set a hearing on December 19, 2018 to consider the Debtors' motion for entry of an order (the "Sale Order") approving the sale of the Hospitals (the "Sale Motion," and the hearing on the Sale Motion, the "Sale Hearing"). The Debtors expect that the sale will close no earlier than February 28, 2019.

The Hospitals were vigorously marketed by the Debtors' investment banker, Cain Brothers, a division of KeyBank Capital Markets, Inc. ("Cain"). Twenty-five parties executed non-disclosure agreements and were granted access to a data room containing information about the Hospitals.[7] Cain sent a direct e-mail communication to over 170 interested potential purchasers which contained key information about the Hospitals.[8] Cain actively followed up with two serious potential purchasers, assisting those parties with due diligence and making itself available to answer questions.[9] Notwithstanding these thorough marketing efforts, no party emerged willing to place a bid for the Hospitals.[10]

In 2015, the Debtors' predecessor, Daughters of Charity Ministry Services Corporation ("Daughters"), sought authorization from the Attorney General, pursuant to Cal. Corp. Code §5914, to implement a *System Restructuring and Support Agreement* (the "Restructuring Agreement"). The Attorney General approved the Restructuring Agreement, subject to various conditions (each, a "Condition," and collectively, the "Conditions").[11] O'Connor was subject to 21 Conditions; St. Louise was subject to 22 Conditions.

Among other things, the Conditions require the Hospitals to maintain specified levels of emergency services, intensive care services, cardiac services, and various other services. The Conditions purport to be binding upon "any and all current and future owners" of the Hospitals.[12]

On October 10, 2018, the Attorney General filed an objection to the Bidding Procedures Motion.[13] The Attorney General objected to the Debtors' proposal to sell the Hospitals free and clear of the Conditions, contending that the Conditions remained binding upon any purchaser of the Hospitals. The Court did not address the Attorney General's objection when adjudicating the

---

[5] *See* Doc. No. 724 (Bidding Procedures Order) and Doc. No. 365 (Bidding Procedures Motion).

[6] The APA [Doc. No. 365, Ex. A] defines the assets being sold as follows: "all assets, businesses, real property, personal property, equipment, supplies, software, contracts, leases, licenses/permits, books, records, offices, facilities, and all other tangible and intangible property (a) whatsoever and wherever located that is owned, leased, or used primarily in connection with the Businesses by a Hospital Seller, (b) located in Santa Clara County, California that is owned, leased, or used primarily in connection with the Businesses by Verity Holdings, and (c) whatsoever and wherever located that is owned, leased, or used by Verity primarily in connection with the Businesses, in each case, except for the Excluded Assets." APA at ¶1.8.

[7] Decl. of James M. Moloney [Doc. No. 1041] (the "Moloney Decl.") at ¶6.

[8] *Id.* at ¶7.

[9] *Id.* at ¶¶7–8.

[10] *Id.* at ¶9.

[11] The Conditions are memorialized in documents captioned *Conditions to Change in Control and Governance of O'Connor Hospital and Approval of the System Restructuring and Support Agreement by and among Daughters of Charity Ministry Services Corporation, Daughters of Charity Health System, Certain Funds Managed by BlueMountain Capital Management, LLC, and Integrity Healthcare, LLC* [Doc. No. 256, Ex. A, at 176–187] (the "O'Connor Conditions") and *Conditions to Change in Control and Governance of Saint Louise Regional Hospital and Approval of the System Restructuring and Support Agreement by and among Daughters of Charity Ministry Services Corporation, Daughters of Charity Health System, Certain Funds Managed by BlueMountain Capital Management, LLC, and Integrity Healthcare, LLC* [Doc. No. 256, Ex. A, at 261–273] (the "St. Louise Conditions").

[12] O'Connor Conditions at 176–77 and St. Louise Conditions at 261–62.

[13] Doc. No. 463.

Bidding Procedures Motion, finding the objection to be premature. The Bidding Procedures Order provided that the Attorney General's objection was "preserved for the Sale Hearing and may be raised at that time."[14]

On November 2, 2018, Santa Clara asked the Attorney General to provide clarification regarding his position as to the applicability of certain of the Conditions.[15] Santa Clara asserted that its status as a government entity made it impossible to comply with certain Conditions without violating its obligations under California law and the California Constitution. On November 9, 2018, the Attorney General responded, advising that five of the Conditions would not be enforced against Santa Clara.[16] Specifically, the Attorney General waived enforcement of Conditions requiring the Hospitals to furnish specified amounts of charity care and community benefits, Conditions pertaining to pension obligations, and Conditions pertaining to the composition of the Board of Trustees of each Hospital.

On December 14, 2018, the Attorney General filed a response to the Debtors' memorandum in support of the Sale Motion (the "Response").[17] The Response provided:

> The California Attorney General does not object to the sale to the County of Santa Clara, in light of the conditions as clarified in the Attorney General's November 9, 2018 letter to the County of Santa Clara and as may be subsequently further clarified or modified by the Attorney General. The Attorney General and the County are presently engaged in further discussions about the Conditions not addressed by the Attorney General's November 9, 2018 letter, and as such, the Attorney General will continue to consider any further requests for clarification or modification presented by the County.

Response at 2.

The APA provides that Santa Clara is not required to accept a Sale Order that does not provide for the sale of the Hospitals free and clear of all liens, claims, and interests (including the Conditions).[18] The Attorney General's Response did not state that the Attorney General objected to sale of the Hospitals free and clear of the Conditions.

At the Sale Hearing, the Attorney General stated that the Response was "inartfully drafted," and that the Attorney General did in fact object to sale of the Hospitals free and clear of the Conditions. The Debtors and Santa Clara asked the Court to approve the sale free and clear of the Conditions, asserting that the Attorney General had waived its objections and/or was estopped from asserting such objections. Santa Clara's counsel explained that in order for the County to be able to proceed with the closing—anticipated to occur at the end of February 2019—it was necessary for any uncertainty regarding the applicability of the Conditions to be immediately resolved. Santa Clara stated that if an order providing for a sale free and clear of the Conditions was not entered by the January 2, 2019 deadline set forth in the APA, it would be Santa Clara's position that a breach of the APA had occurred.

---

[14] Bidding Procedures Order [Doc. No. 724] at ¶3.
[15] Doc. No. 1066, Ex. 1.
[16] Doc. No. 1066, Ex. 2.
[17] Doc. No. 1066.
[18] APA at ¶6.2.6.

## II. Findings and Conclusions
### A. The Attorney General Has Waived His Ability to Contest a Sale Free and Clear of the Conditions

"Waiver is the voluntary relinquishment of a known right or conduct such as to warrant an inference to that effect. It implies knowledge of all material facts and of one's rights, together with a willingness to refrain from enforcing those rights." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1119 (9th Cir. 2009). Waiver also occurs when a "party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 938 (9th Cir. 2017).

The Response filed by the Attorney General on December 14, 2018 waived the Attorney General's right to object to a sale free and clear of the Conditions. The Response provided: "The California Attorney General *does not object* to the sale to the County of Santa Clara …." (emphasis added).[19] It contained no reservation of the Attorney General's right to object in the event that the contemplated "further requests for clarification or modification presented by the County"[20] did not yield results acceptable to the Attorney General. The Attorney General knew that the Debtors were seeking approval of a sale free and clear of the Conditions, because the APA contained unequivocal language to that effect. By filing the Response, the Attorney General voluntary relinquished his right to object to a sale free and clear.

In addition, the filing of the Response was so inconsistent with an intent to continue to enforce the Conditions against Santa Clara as to induce Santa Clara to reasonably believe that the Attorney General had abandoned his position as to the enforceability of the Conditions. *See Salyers*, 871 F.3d at 938.

In support of his contention that the Response did not waive his objections, the Attorney General points to conversations between the Attorney General's counsel and Santa Clara's counsel that took place contemporaneously with the filing of the Response. Angela Sierra, Chief Assistant Attorney General of the Public Rights Division at the California Department of Justice, testifies that she had a short conversation with Douglas M. Press, Santa Clara's Assistant County Counsel, on December 14, 2018.[21] According to Ms. Sierra:

> Shortly before the Attorney General Office's filing of the AG Response, my Office had proposed incorporating our previously lodged objections into [the] AG Response by way of a footnote. After further consideration of an issue raised by the County, I determined that such incorporation was not necessary, given that we had not withdrawn our objections. Approximately ten minutes before the noon filing deadline on December 14, 2018, I had a short conversation with Assistant County Counsel Doug Press, during which I explained that the language that my Office was poised to file meant that we did not object to the sale as long as the conditions as currently or subsequently clarified remained in place. Doug Press stated that he disagreed with that interpretation.
>
> I participated in several discussions with Assistant County Counsel Doug Press regarding the AG Conditions following the filing of the AG Response on December 14, 2018. These discussions continued through December 18, 2018. At no time during those

---

[19] Response at 2.
[20] *Id.*
[21] Declaration of Angela Sierra [Doc. No. 1144] (the "Sierra Decl.") at ¶6.

discussions did our Office communicate that we had waived the applicability of the AG Conditions.[22]

Mr. Press disputes Ms. Sierra's characterization of the December 14, 2018 conversation. Mr. Press' account of the conversation is as follows:

> On … December 14, 2018, the California Attorney General's Office proposed language to be inserted in a response that day that would have asserted that its approval of the sale was conditional, but we agreed to remove that conditional language. Instead, we agreed to the unconditional language that appears in the Attorney General's response … that … "[t]he California Attorney General does not object to the sale to the County of Santa Clara, *in light of* the conditions as clarified in the Attorney General's November 9, 2018 letter to the County of Santa Clara and as may be subsequently further clarified or modified by the Attorney General." [Emphasis Added.] The unconditional "in light of" language was meant, as the County understood it, to reflect that the California Attorney General would no longer object to the sale, although we also agreed to continue to discuss, post-sale, how to address the other conditions under a variety of approaches. But the message to the Court and the community was meant to be clear, that the California Attorney General, in its Response, … was expressing that it was not opposed to the sale even though ongoing discussions with the County about the other conditions were contemplated outside the Court process.[23]

The Court declines to consider the testimony of Ms. Sierra and Mr. Press in determining whether the filing of the Response effected a waiver of the Attorney General's objections. When litigating with a sophisticated party such as the Attorney General, the Debtors, Santa Clara, and other interested parties are entitled to presume that representations made by the Attorney General in papers filed with the Court accurately reflect his position. Allowing the Attorney General, or any other party, to qualify statements made in papers through the subsequent introduction of parol evidence would unduly hamper the Court's ability to adjudicate matters arising in this case. More than 63 separate papers have been filed in connection with the Bidding Procedures Motion and Sale Motion. The papers raise multiple discrete and complicated issues, including whether the sale could be free and clear of obligations imposed in connection with various collective bargaining agreements; whether the Debtors sufficiently marketed the Hospitals; whether the bidding procedures proposed by the Debtors would yield the maximum price for the estate; whether the Debtors had articulated sufficient business justification for the sale; whether the sales price is fair and reasonable; whether the APA was negotiated in good faith and at arms-length; whether the Debtors' Medicare and Medi-Cal Provider Agreements are properly characterized as an executory contract or a statutory entitlement; and whether the Debtors are entitled to assume and assign various unexpired leases and executory contracts.[24] Even if only a fraction of the parties who have filed papers were allowed to introduce supplemental evidence establishing what their papers really meant, the adjudicative process would grind to a halt.

Pursuant to FRE 403, the Court may exclude evidence if consideration thereof would result in undue delay. Exclusion of the declarations of Ms. Sierra and Mr. Press is warranted under

---

[22] Sierra Decl. at ¶¶6–7.
[23] Press Decl. [Doc. No. 1141] at ¶5.
[24] Adjudication of certain of these issues will take place on January 30, 2019.

FRE 403, particularly where, as here, the consideration of such evidence would require the Court to consider similar evidence submitted by other parties dissatisfied by the Court's rulings. In addition, the Court has the inherent power to "manage [its] own affairs so as to achieve the orderly and expeditious disposition" of matters coming before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132, 115 L. Ed. 2d 27 (1991). Finally, in the same way that the parol evidence rule bars consideration of extrinsic evidence in connection with the interpretation of an integrated contract, *see Casa del Caffe Vergnano S.P.A. v. ItalFlavors, LLC*, 816 F.3d 1208, 1213 (9th Cir. 2016), the Court finds it appropriate to similarly decline to consider extrinsic evidence when interpreting papers submitted by a sophisticated litigant such as the Attorney General.

## B. The Attorney General is Equitably Estopped from Contesting a Sale Free and Clear of the Conditions

A party may be equitably estopped from asserting a position if the following conditions apply:

1) [T]he party to be estopped must know the facts;
2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended;
3) the latter must be ignorant of the true facts; and
4) he must rely on the former's conduct to his injury.

*Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 955 (9th Cir. 2014).

Under the circumstances, the Attorney General is equitably estopped from contesting the Debtors' ability to sell the Hospitals free and clear of the Conditions. The Attorney General knew that the Debtors and Santa Clara would rely upon the Response's representation that he had no objection to the sale. The Debtors and Santa Clara had no way of knowing that when the Attorney General stated that he did "not object to the sale to the County of Santa Clara,"[25] what he really meant was that he did not object except to the extent that he did object. The Debtors and Santa Clara relied upon the Attorney General's representation to their detriment. Had they been aware of the Attorney General's true position, the Debtors and Santa Clara would have more vigorously contested the Attorney General's arguments regarding the binding effect of the Conditions.

Relying upon *Jordan v. California Dep't of Motor Vehicles*, 100 Cal. App. 4th 431, 453, 123 Cal. Rptr. 2d 122 (2002), *as modified on denial of reh'g* (Aug. 20, 2002), the Attorney General argues that equitable estoppel may not be invoked where, as here, "it would operate to defeat the effective operation of a policy adopted to protect the public." *Id.* at 453. This argument fails because, as discussed in Section II.C., below, the Attorney General has not identified a statutory basis for its assertion that the Conditions remain enforceable against Santa Clara. Consequently, the Attorney General has failed to show that continued enforcement of the Conditions is supported by California law.

---

[25] Response at 2.

**C. Even if the Doctrines of Waiver and Equitable Estoppel Did Not Apply, a Sale of the Hospitals Free and Clear of the Conditions is Authorized under §363(f)(1)**

Section 363(d)(1) authorizes non-profit entities, such as the Debtors, to sell estate assets only if the sale is "in accordance with nonbankruptcy law applicable to the transfer of property by" a non-profit entity. Section 363(b) permits the Debtors to sell estate property out of the ordinary course of business, subject to court approval. The Debtors must articulate a business justification for the sale. *In re Walter*, 83 B.R. 14, 19–20 (9th Cir. BAP 1988). Whether the articulated business justification is sufficient "depends on the case," in view of "all salient factors pertaining to the proceeding." *Id.* at 19–20. Section 363(f)(1) provides that a sale of estate property may be "free and clear of any interest in such property of an entity other than the estate, only if applicable nonbankruptcy law permits sale of such property free and clear of such interest …."

*1. The Conditions Are an Interest in Property Within the Meaning of §363*

As this Court has previously explained:

> The Bankruptcy Code does not define the phrase "interest in ... property" for purposes of § 363(f). The Third Circuit has held that the phrase "interest in ... property" is "intended to refer to obligations that are connected to, or arise from, the property being sold." *Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 259 (3d Cir. 2000). That conclusion is echoed by *Collier on Bankruptcy*, which observes a trend in caselaw "in favor of a broader definition [of the phrase] that encompasses other obligations that may flow from ownership of the property." 3 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 363.06[1] (16th ed. 2017).
>
> Courts have held that interests in property include monetary obligations arising from the ownership of property, even when those obligations are imposed by statute. For example, in *Mass. Dep't of Unemployment Assistance v. OPK Biotech, LLC (In re PBBPC, Inc.)*, 484 B.R. 860 (1st Cir. BAP 2013), the court held that taxes assessed by Massachusetts under its unemployment insurance statutes constituted an "interest in ... property." The taxes were computed based on the Debtor's "experience rating," which was determined by the number of employees it had terminated in the past. *Id.* at 862. Because the Debtor had terminated most of its employees prior to selling its assets, its experiencing rating, and corresponding unemployment insurance tax liabilities, were very high. *Id.* The *PBBPC* court held that the experience rating was an interest in property that could be cut off under § 363(f). *Id.* at 869–70. Similarly, in *United Mine Workers of Am. Combined Benefit Fund v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573, 581, the court held that monetary obligations imposed by the Coal Industry Retiree Health Benefit Act of 1992 constituted an "interest in ... property" within the meaning of § 363(f).

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 567 B.R. 820, 825–26 (Bankr. C.D. Cal. 2017), *appeal dismissed*, No. 2:16-BK-17463-ER, 2018 WL 1229989 (C.D. Cal. Jan. 19, 2018).

The Conditions are an "interest in property" within the meaning of §363(f). The Conditions provide that any owner of the Hospitals must furnish specified levels of emergency services, intensive care services, cardiac services, and various other services. The required service levels were derived based upon the historical experience of the prior operator. As such, the Conditions are monetary obligations arising from the ownership of property.

*2. The Debtors May Sell the Hospitals Free and Clear of the Conditions under Applicable Nonbankruptcy Law*

Under certain circumstances, the sale of a not-for-profit healthcare facility is subject to review by the Attorney General. Cal. Corp. Code §5914 provides in relevant part (emphasis added):

> Any nonprofit corporation that is defined in Section 5046 and operates or controls a health facility, as defined in Section 1250 of the Health and Safety Code, or operates or controls a facility that provides similar health care, regardless of whether it is currently operating or providing health care services or has a suspended license, shall be required to provide written notice to, and to obtain the written consent of, the Attorney General prior to entering into any agreement or transaction to do either of the following:
>
> (A) Sell, transfer, lease, exchange, option, convey, or otherwise dispose of, its assets to a *for-profit corporation or entity or to a mutual benefit corporation or entity* when a material amount of the assets of the nonprofit corporation are involved in the agreement or transaction.
>
> (B) Transfer control, responsibility, or governance of a material amount of the assets or operations of the nonprofit corporation to any *for-profit corporation or entity or to any mutual benefit corporation or entity*.

Here, the sale is not subject to Attorney General review because the Hospitals are being sold to Santa Clara, which is a public entity, not a for-profit corporation or mutual benefit corporation. Notwithstanding its inability to review the sale, the Attorney General contends that the Conditions—which were imposed in connection with the Attorney General's §5914 review authority—nonetheless remain binding upon any subsequent purchaser of the Hospitals. In support of this contention, the Attorney General cites Cal. Corp. Code §5926, which provides: "The Attorney General may enforce conditions imposed on the Attorney General's consent to an agreement or transaction pursuant to Section 5914 or 5920 to the fullest extent provided by law."

The Court finds that neither Cal. Corp. Code §5926 nor any of the other provisions set forth in Cal. Corp. Code §§ 5914–30 provide the Attorney General with authority to enforce the Conditions against Santa Clara if Santa Clara acquires the Hospitals. In reaching this conclusion, the Court construes the California Corporations Code consistent with California's rules of statutory construction. *See Fed. Sav. & Loan Ins. Corp. v. Butler*, 904 F.2d 505, 510 (9th Cir. 1990) (applying California's rules of statutory construction to interpret Cal. Civ. Proc. Code § 877).

Under California law, the "ultimate task" in statutory interpretation "is to ascertain the Legislature's intent." *People v. Massie*, 19 Cal.4th 550, 569, 79 Cal.Rptr.2d 816, 967 P.2d 29 (1998). "Ordinarily, the words of the statute provide the most reliable indication of legislative intent." *Pac. Gas & Elec. Co. v. Cty. of Stanislaus*, 16 Cal.4th 1143, 1152, 69 Cal.Rptr.2d 329, 947 P.2d 291 (1997). Only where the statutory language is ambiguous may the Court consider "evidence of the Legislature's intent beyond the words of the statute," such as the "statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality …." *Hughes v. Bd. of Architectural Examiners*, 17 Cal.4th 763, 776, 952 P.2d 641 (1998). "When statutory language is … clear and unambiguous there is no need for construction, and *courts should not indulge in it*." *Delaney v.*

*Superior Court*, 50 Cal.3d 785, 800, 268 Cal.Rptr. 753, 789 P.2d 934 (1990) (emphasis in original). However, the "language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." *Younger v. Superior Court*, 21 Cal.3d 102, 113, 145 Cal.Rptr. 674, 577 P.2d 1014 (1978).

The Legislature enacted Cal. Corp. Code § 5914 to ensure that the public was not deprived of the benefits of charitable health facilities as a result of the transfer of those facilities' assets to for-profit entities. In enacting § 5914, the Legislature found:

> Charitable, nonprofit health facilities have a substantial and beneficial effect on the provision of health care to the people of California, providing as part of their charitable mission uncompensated care to uninsured low-income families and under-compensated care to the poor, elderly, and disabled.
> Transfers of the assets of nonprofit, charitable health facilities to the for-profit sector, such as by sale, joint venture, or other sharing of assets, directly affect the charitable use of those assets and may affect the availability of community health care services....
> It is in the best interests of the public to ensure that the public interest is fully protected whenever the assets of a charitable nonprofit health facility are transferred out of the charitable trust and to a for-profit or mutual benefit entity.

1996 Cal. Legis. Serv. Ch. 1105 (A.B. 3101) (West).

As discussed, the sale of a nonprofit health facilities' assets to a public entity (such as Santa Clara) are not subject to Attorney General review. This exception is consistent with the statute's objective of ensuring that nonprofit health assets are operated consistent with a charitable mission and in the public interest, because public entities are required by law to furnish healthcare services to those in need. Cal. Welf. & Inst. Code §17000 requires public entities to provide support, including healthcare, to indigent members of the public:

> Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions.

As one court has explained, "[s]ection 17000 imposes various obligations on counties with respect to their indigent residents. Among other obligations, courts have interpreted section 17000 as requiring counties to provide indigent residents with emergency and medically necessary care." *Fuchino v. Edwards-Buckley*, 196 Cal. App. 4th 1128, 1134, 126 Cal. Rptr. 3d 886, 890 (2011).

As set forth above, the Attorney General's position is that the Conditions remain binding upon Santa Clara, notwithstanding the Attorney General's inability to review the sale. The Attorney General's reliance upon Cal. Corp. Code §5926 in support of this position is unavailing. Section 5926 provides only that the Attorney General may enforce the Conditions to the fullest extent provided by law. However, the Attorney General has not identified the specific provisions of California law that permit the continued enforcement of the Conditions.[26] This

---

[26] The Attorney General asserts that Art. V, §13 of the California Constitution grants him authority to enforce the Conditions. Art. V, §13 is a general provision stating only that the Attorney General has the authority to "see that the laws of the State are uniformly and adequately enforced"; it contains nothing specifically addressing the situation

omission is particularly glaring in view of the Attorney General's lack of authority to review the sale.

In reaching this conclusion, the Court finds it significant that the Attorney General has failed to identify the statutory basis for its position even after being afforded an opportunity to respond to the Court's Preliminary Findings. The Preliminary Findings advised the Attorney General that because he had failed to identify the statutory authority for continued enforcement of the Conditions, the Court intended to authorize the Debtors to sell the Hospitals free and clear of the Conditions. In response to the Preliminary Findings, the Attorney General cited to provisions in the Conditions that purport to make the Conditions legally binding upon any entity acquiring the Hospitals. Notably, the Attorney General did not cite to any provision of California law entitling him to enforce successorship liability under the circumstances of this case.

The Attorney General's reliance upon provisions purporting to make the Conditions binding upon all successors, regardless of the circumstances under which such successors acquire the Hospitals, is an impermissible attempt to expand his regulatory authority over the Hospitals. Provisions within the Conditions are enforceable only to the extent that they are supported by California law.

Furthermore, the Attorney General's contention that the Conditions remain binding upon Santa Clara is inconsistent with the Cal. Corp. Code §5914 and its legislative history. The concern motivating enactment of the statute was to prevent charitable assets from falling into the hands of for-profit entities who would not continue to use those assets for charitable purposes. The concern has no applicability where the assets are transferred to a public entity, which has independent statutory obligations to maintain the assets' charitable character, as discussed above.

Because the Attorney General has no authority to review the sale of the Hospitals to Santa Clara, and because the Attorney General has identified no statutory provision permitting his continued enforcement of the Conditions under the circumstances, the Court finds that the Debtors may sell the Hospitals free and clear of the Conditions under applicable nonbankruptcy law.

### D. The Attorney General's Request for a 14-day Stay of the Sale Order is Denied

Bankruptcy Rule 6004(h) provides that an "order authorizing the … sale … of property … is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Attorney General requests that the stay imposed by Bankruptcy Rule 6004(h) remain in effect. According to the Attorney General, a 14-day stay is necessary because the "proposed sale will have a significant impact on the health and safety of the surrounding communities."[27] Debtors assert that the 14-day stay should not apply so that the sale may close as expeditiously as possible. The sale is currently projected to close at the end of February 2019.

The 1999 Advisory Committee Note to Bankruptcy Rule 6004 states that the rule is intended "to provide sufficient time for a party to request a stay pending appeal of an order authorizing the … sale … of property under §363(b) of the Code before the order is implemented."

To enable the sale to close expeditiously, the Sale Order shall be effective immediately upon entry, notwithstanding Bankruptcy Rule 6004(h). Because the sale will not close until the end of February 2019, in the Court's view, the Attorney General's appeal of the Sale Order will not

---

presented here. The Attorney General's reliance upon *D'Amico v. Board of Medical Examiners*, 11 Cal. 3d 1, 14, 520 P.2d 10 (1974) is similarly misplaced. *D'Amico* states that the Attorney General possesses extensive statutory powers to protect the public interest but does not specifically address any of the legal issues presented here.
[27] Doc. No. 1140 at 15.

likely be rendered moot by the Court's waiver of the 14-day stay.[28] Accordingly, the Attorney General will suffer no prejudice from waiver of the stay. On the other hand, waiving the stay will benefit the Debtors, Santa Clara, and the estate by enabling the parties to immediately begin performing the significant work that is a prerequisite to the closing.

## III. Conclusion

Based upon the foregoing, the Attorney General's objections to the Sale Motion are overruled, and the Debtors are authorized to sell the Hospitals free and clear of the Conditions, pursuant to §363(f)(1). The Court will enter the proposed Sale Order submitted by the Debtors.
###

Date: December 26, 2018

Ernest M. Robles
United States Bankruptcy Judge

---

[28] Of course, only the appellate court has the authority to determine whether any appeal of the Sale Order is moot.

Docket #1553  Date Filed: 12/27/2018

1   SAMUEL R. MAIZEL (Bar No. 189301)
    samuel.maizel@dentons.com
2   TANIA M. MOYRON (Bar No. 235736)
    tania.moyron@dentons.com
3   DENTONS US LLP
    601 South Figueroa Street, Suite 2500
4   Los Angeles, California 90017-5704
    Tel: (213) 623-9300 / Fax: (213) 623-9924
5
    Attorneys for the Chapter 11 Debtors and
6   Debtors In Possession

**FILED & ENTERED**

**DEC 27 2018**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

7                  **UNITED STATES BANKRUPTCY COURT**
        **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

CHANGES MADE BY COURT

8   In re                                  Lead Case No. 2:18-bk-20151-ER
9
    VERITY HEALTH SYSTEM OF              Jointly Administered With:
10  CALIFORNIA, INC., *et al.*,          Case No. 2:18-bk-20162-ER
                                         Case No. 2:18-bk-20163-ER
11          Debtors and Debtors In Possession.   Case No. 2:18-bk-20164-ER
                                         Case No. 2:18-bk-20165-ER
12  ☒ Affects All Debtors                Case No. 2:18-bk-20167-ER
                                         Case No. 2:18-bk-20168-ER
13  ☐ Affects Verity Health System of   Case No. 2:18-bk-20169-ER
        California, Inc.                 Case No. 2:18-bk-20171-ER
14  ☐ Affects O'Connor Hospital         Case No. 2:18-bk-20172-ER
15  ☐ Affects Saint Louise Regional Hospital   Case No. 2:18-bk-20173-ER
    ☐ Affects St. Francis Medical Center  Case No. 2:18-bk-20175-ER
16  ☐ Affects St. Vincent Medical Center  Case No. 2:18-bk-20176-ER
    ☐ Affects Seton Medical Center       Case No. 2:18-bk-20178-ER
17  ☐ Affects O'Connor Hospital Foundation   Case No. 2:18-bk-20179-ER
    ☐ Affects Saint Louise Regional Hospital   Case No. 2:18-bk-20180-ER
18      Foundation                       Case No. 2:18-bk-20181-ER
    ☐ Affects St. Francis Medical Center of
19      Lynwood Foundation               Hon. Judge Ernest M. Robles
    ☐ Affects St. Vincent Foundation
20  ☐ Affects St. Vincent Dialysis Center, Inc.   **ORDER (A) AUTHORIZING THE SALE**
    ☐ Affects Seton Medical Center Foundation   **OF CERTAIN OF THE DEBTORS'**
21  ☐ Affects Verity Business Services   **ASSETS TO SANTA CLARA COUNTY FREE**
    ☐ Affects Verity Medical Foundation  **AND CLEAR OF LIENS, CLAIMS,**
22  ☐ Affects Verity Holdings, LLC       **ENCUMBRANCES, AND OTHER INTERESTS;**
    ☐ Affects De Paul Ventures, LLC      **(B) APPROVING THE**
23  ☐ Affects De Paul Ventures - San Jose   **ASSUMPTION AND ASSIGNMENT OF**
        Dialysis, LLC                    **AN UNEXPIRED LEASE RELATED**
                                         **THERETO; AND (C) GRANTING**
24          Debtors and Debtors In Possession.   **RELATED RELIEF**

25                                       **Hearing:**
                                         **Date:       December 19, 2018**
26                                       **Time:       10:00 am**
                                         **Location:   Courtroom 1568**
                                                      **255 E. Temple St., Los Angeles, CA**
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300



1820151181227000000000008

This matter came before the Court on the *Motion For The Entry Of (I) An Order (1) Approving Form Of Asset Purchase Agreement For Stalking Horse Bidder And For Prospective Overbidders To Use, (2) Approving Auction Sale Format, Bidding Procedures And Stalking Horse Bid Protections, (3) Approving Form Of Notice To Be Provided To Interested Parties, (4) Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest Bidder And (5) Approving Procedures Related To The Assumption Of Certain Executory Contracts And Unexpired Leases; And (II) An Order (A) Authorizing The Sale Of Property Free And Clear Of All Claims, Liens And Encumbrances* (the "Motion") [Docket No. 365], filed by Verity Health System of California, Inc. ("VHS"), and the above-referenced affiliated debtors and debtors in possession in the above-captioned chapter 11 bankruptcy cases (the "Debtors"), for the entry of an order, pursuant to §§ 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9007, and 9014, and LBR 6004-1.[1]

At the previous hearing on the Motion on October 31, 2018 (the "Bidding Procedures Hearing"), the Court considered various objections (the "Premature Objections") filed by: (i) the Federal Communications Commission ("FCC") [Docket No. 437]; (ii) the United States Department of Health and Human Services ("HHS") [Docket No. 447, 562, and 613]; (iii) the California Attorney General ("CAG") [Docket No. 463, 599, 605, 608, and 619]; (iv) entities who are parties to or benefit from various collective bargaining agreements with the Debtors [Docket No. 450, 458, 460, 465, and 597]; (v) the Pension Benefit Guaranty Corporation ("PBGC") [Docket No. 439]; (vi) the Retirement Plan for Hospital Employees [Docket No. 460]; (vii) OCH Forest 1 [Docket Nos. 452 and 561]; (viii) Premier and Infor [Doc. Nos. 444, 561, and 592]; and (ix) the MOB Financing Entities [Docket No. 500]. The Debtors filed an omnibus reply to the majority of the objections [Docket No. 561], and separate replies to the HHS [Docket No. 562], and the CAG [Docket No. 560] objections. The Court ruled that the Premature Objections were premature and preserved for the Sale Hearing, as set forth in order granting the Motion (the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "LBR" references are to the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

"Bidding Procedures Order") [Docket No. 724].  Any additional objections that were filed and overruled at the Bidding Procedures Hearing are not listed herein.

     The Court, having reviewed the Memorandum [Docket No. 1041] and the notice of errata related thereto [Docket No. 1050], the Declarations of Richard Adcock [Docket Nos. 8 and 393], James Moloney [Docket Nos. 394 and 1041] and Jeffrey Smith [Docket No. 1044] in support of the Motion, the *Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May Be Assumed and Assigned* [Docket No. 810], the *Supplement to Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May be Assumed and Assigned* [Docket No. 998], the *Notice That No Auction Shall Be Held* [Docket No. 1005], the response by the CAG [Docket No. 1066], the *Amended Notice of Contracts Designated by Santa Clara County for Assumption and Assignment* [Docket No. 1110], the objections filed by various counter-parties to certain contracts and leases [Docket Nos. 882, 889, 904-05, 913-14, 919, 920-21, 923, 928-29, 931, 933, 946, 970, 986, 1016, 1018, 1043, 1046, 1057-59, 1062, 1068-69, 1070-71,1080, 1085, 1088-89, 1091-96, 1120-21], as set forth on **Exhibit "A"** attached to the *Notice Of Filing Listing Objections To Proposed Cure Amounts And Assumption And Assignment Of Certain Unexpired Executory Contracts And Unexpired Leases* (the "Cure Objections") [Docket No. 1145], the California Department of Health Care Services ("DHCS") [Docket No. 906], and the California Nurses Association and Stationary Engineers Local 39 [Docket Nos. 1057-1062, 1067-1071], the Premature Objections and any withdrawals thereof [Docket Nos. 1090 and 1100], the statements, arguments and representations of the parties made at the Sale Hearing; and the entire record of these cases; and the Court, having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, their creditors and their shareholders, and that the legal and factual bases set forth in the Motion and presented at the Sale Hearing establish just cause for the relief granted herein and for the reasons set forth in the *Memorandum of Decision Overruling Objections of the California Attorney General to the Debtor's Sale Motion* [Docket No. 1146], ~~Court's tentative ruling [Docket No. ____], the~~ *Order Providing Notice Of The Court's Intent To Authorize The Debtors To Sell Hospitals Free And*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 3 -

~~Clear Of The 2015 Conditions Asserted By The California Attorney General~~ ~~[Docket No. 1125],~~
~~and the responses thereto [Docket Nos. 1136-37, 1139-41];~~ and all objections to the Motion, if
any, having been withdrawn or overruled; and after due deliberation and sufficient good cause
appearing therefor,

## THE COURT HEREBY FINDS AND CONCLUDES THAT:[2]

A. <u>Jurisdiction and Venue</u>. This Court has jurisdiction to hear and determine the
Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the
Debtors' bankruptcy estates and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b)
(2) (A), (M), (N) and (O). Venue of these cases is proper in this District and in this Court
pursuant to 28 U.S.C. §§ 1408 and 1409.

B. <u>Statutory Predicates</u>. The statutory predicates for the relief requested in the
Motion are (i) §§ 105(a), 363(b), (f), (k), (l) and (m), and 365, (ii) Rules 2002(a)(2), 2002(c)(1)
and (d), 6004 (a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9006, 9007, 9013 and 9014, and
(iii) LBR 6004-1 and 9013-1.

C. <u>Notice</u>. As evidenced by the affidavits of service previously filed with the Court,
the Debtors have provided proper, timely, adequate and sufficient notice with respect to the
following: (i) the Motion and the relief sought therein, including the entry of this Sale Order and
the transfer and sale of the assets (the "<u>Purchased Assets</u>"), as set forth in the Asset Purchase
Agreement, dated October 1, 2018, a copy of which is attached as Exhibit "A" to Docket No. 365
(the "<u>APA</u>"); (ii) the Sale Hearing; (iii) the *Notice That No Auction Shall Be Held*; and (iv) the
assumption and assignment of the executory contracts and unexpired leases and proposed cure
amounts owing under such executory contracts and unexpired leases (the "<u>Cure Amounts</u>"); and
no further notice of the Motion, the relief requested therein or the Sale Hearing is required. The
Debtors have also complied with all obligations to provide notice of the Auction, the Sale

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and
conclusions of law pursuant to Rule 7052, made applicable to this proceeding pursuant to Rule
9014. To the extent that any of the following findings of fact constitute conclusions of law, they
are adopted as such. To the extent that any of the following conclusions of law constitute
findings of fact, they are adopted as such.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Hearing, the proposed sale and otherwise, as required by the Bidding Procedures Order.  A reasonable opportunity to object and to be heard regarding the relief provided herein has been afforded to parties-in-interest.

D.    Arm's Length Transaction.  The APA and other documents and instruments (the "Transaction Documents") related to and connected with this transaction (the "Transaction") and the consummation thereof were negotiated and entered into by the Debtors and the County of Santa Clara, a political subdivision of the State of California ("SCC"), as Purchaser under the APA without collusion, in good faith and through an arm's length bargaining process. Neither SCC nor any of its affiliates or representatives is an "insider" of the Debtors, as that term is defined in § 101(31). None of the Debtors, SCC, or their respective representatives engaged in any conduct that would cause or permit the APA, any of the other Transaction Documents or the Transaction to be avoided under § 363(n), or have acted in any improper or collusive manner. The terms and conditions of the APA and the other Transaction Documents, including, without limitation, the consideration provided in respect thereof, are fair and reasonable, and are not avoidable and shall not be avoided, and no damages may be assessed against SCC or any other party, as set forth in § 363(n). The consideration provided by SCC is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States, including the State of California.

E.    Good Faith Purchaser.  SCC has proceeded in good faith and without collusion in all respects in connection with the sale process, in that: (i) SCC, in proposing and proceeding with the Transaction in accordance with the APA, recognized that the Debtors were free to deal with other interested parties; (ii) SCC agreed to provisions in the APA that would enable the Debtors to accept a higher and better offer; (iii) SCC complied with all of the provisions in the Bidding Procedures Order applicable to SCC; (iv) all payments to be made by SCC and other agreements entered into or to be entered into between SCC and the Debtors in connection with the Transaction have been disclosed; (v) the negotiation and execution of the APA and related Transaction Documents were conducted in good faith and constituted an arm's length transaction;

109891071\V-2

(vi) SCC did not induce or cause the chapter 11 filings by the Debtors; and (vii) the APA was not entered into, and the Transaction being consummated pursuant to and in accordance with the APA is not being consummated, for the purpose of hindering, delaying or defrauding creditors of the Debtors. SCC is therefore entitled to all of the benefits and protections provided to a good-faith purchaser under § 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction or SCC's status as a "good faith" purchaser.

F.    <u>Justification for Relief</u>. Good and sufficient reasons for approval of the APA and the other Transaction Documents and the Transaction have been articulated to this Court in the Motion and at the Sale Hearing, and the relief requested in the Motion and set forth in this Sale Order is in the best interests of the Debtors, their estates, and their creditors. The Debtors have demonstrated through the Motion and other evidence submitted at the Sale Hearing both (i) good, sufficient and sound business purpose and justification and (ii) compelling circumstances for the transfer and sale of the Purchased Assets as provided in the APA outside the ordinary course of business, and (iii) such transfer and sale is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors.

G.    <u>Free and Clear</u>. In accordance with §§ 363(b) and 363(f), the consummation of the Transaction pursuant to the Transaction Documents will be a legal, valid, and effective transfer and sale of the Purchased Assets and will vest in SCC, through the consummation of the Transaction, all of the Debtors' right, title, and interest in and to the Purchased Assets, free and clear of all liens, claims, interests, rights of setoff, netting and deductions, rights of first offer, first refusal and any other similar contractual property, legal or equitable rights, and any successor or successor-in-interest liability theories (collectively, the "<u>Encumbrances</u>"). The Debtors have demonstrated that one or more of the standards set forth in § 363(f)(1)-(5) have been satisfied. Those holders of Encumbrances who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to § 363(f)(2). Those holders of Encumbrances who did object fall within one or more of the other subsections

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

of § 363(f). All holders of the Encumbrances in the Purchased Assets are adequately protected by having their respective Encumbrances attach to the Debtors' interests in the proceeds of the sale of the Purchased Assets under the APA (subject to any Challenge within the meaning of the Final DIP Order that has been, or may be, timely filed), and any related documents or instruments delivered in connection therewith, whenever and wherever received (the "<u>Sale Proceeds</u>") to the extent and manner herein provided.

H.  <u>Prompt Consummation</u>.  The Debtors have demonstrated good and sufficient cause to waive the stay requirement under Rules 6004(h) and 6006(d). Time is of the essence in consummating the Transaction, and it is in the best interests of the Debtors and their estates to consummate the Transaction within the timeline set forth in the Motion and the APA.  The Court finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth in this Order.

I.  <u>Assumption of Executory Contracts and Unexpired Leases</u>. The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign to SCC the Currently Identified Designated Contracts (as defined and identified in paragraph 15 below) and to the extent subsequently identified by SCC pursuant to paragraph 16 below, the Subsequently Identified Designated Contracts (as defined in paragraph 16 below) (the Currently Identified Designated Contracts and the Subsequently Identified Contracts are collectively referred to herein as the "<u>Designated Contracts</u>") in connection with the consummation of the Transaction, and the assumption and assignment of the Designated Contracts is in the best interests of the Debtors and their estates.

J.  <u>Cure/Adequate Assurance</u>. In connection with the Closing, and pursuant to the APA, the Debtors (i.e., O'Connor Hospital ("<u>OCH</u>") and Saint Louise Regional Hospital ("<u>SLRH</u>")) will have cured, unless otherwise ordered, any and all defaults existing on or prior to the Closing under any of the Designated Contracts, within the meaning of § 365(b)(1)(A), by payment of the amounts and in the manner set forth below. SCC has provided or will provide adequate assurance of future performance of and under the Designated Contracts within the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

meaning of § 365(b)(1)(C) and § 365(f)(2)(B), and shall have no further obligation to provide assurance of performance to any counterparty to a Designated Contract. Pursuant to § 365(f), the Designated Contracts to be assumed by the Debtors and assigned to SCC under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, SCC notwithstanding any provision in such Designated Contracts prohibiting their assignment or transfer. The Debtors have demonstrated that no other parties to any of the Designated Contracts has incurred any actual pecuniary loss resulting from a default on or prior to the Closing under any of the Designated Contracts within the meaning of § 365(b)(1)(B). Pursuant to § 365(f), the Designated Contracts to be assumed by the Debtors and assigned to SCC at the Closing shall be assigned and transferred to, and remain in full force and effect for the benefit of, SCC notwithstanding any provision in such contracts or other restrictions prohibiting their assignment or transfer.

K.  Rejection of Executory Contracts and Unexpired Leases. The Debtors have demonstrated that it is a reasonable and appropriate exercise of their sound business judgment for OCH and SLRH to reject all of their executory contracts and unexpired leases, excluding (i) Designated Contracts, (ii) any prepetition multiparty contract affecting more than one Debtor in addition to OCH and/or SLRH, and (iii) any collective bargaining agreement, pension plan or health and welfare plan providing collectively bargained benefits to which OCH and/or SLRH is a party or sponsor, which matters shall be scheduled for determination as provided in paragraph 33 below. Each such executory contract rejection is subject only to the conditions set forth in paragraphs 18, 31, and 32. The Debtors shall file an appropriate motion to reject such contracts, covered by this paragraph K, prior to Closing and shall request therein that the rejection be effective as of the Closing or as otherwise appropriate.

L.  Highest or Otherwise Best Offer. The Debtors solicited offers and noticed the Auction in accordance with the provisions of the Bidding Procedures Order. The Auction was duly noticed, the sale process was conducted in a non-collusive manner and the Debtors afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

better offer to purchase the Purchased Assets. No other Qualified Bid (as defined in the Bidding Procedures Order) was received by the Partial Bid Deadline or the Bid Deadline (as defined in the Bidding Procedures Order). Accordingly, on December 7, 2018, the Debtors filed the *Notice That No Auction Shall Be Held*. The transfer and sale of the Purchased Assets to SCC on the terms set forth in the APA constitutes the highest or otherwise best offer for the Purchased Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination, in consultation with the Official Committee of Unsecured Creditors (the "Committee") and the Prepetition Secured Creditors (as defined in the Final DIP Order defined below), that the APA constitutes the highest or best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

M.      No *De Facto* or *Sub Rosa* Plan of Reorganization. The sale of the Purchased Assets does not constitute a *de facto* or *sub rosa* plan of reorganization or liquidation because it does not propose to (i) impair or restructure existing debt of, or equity or membership interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors, (iii) circumvent chapter 11 safeguards, including those set forth in §§ 1125 and 1129, or (iv) classify claims or equity or membership interests.

N.      Legal and Factual Bases. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is GRANTED and APPROVED in all respects to the extent provided herein.

2.      All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, settled, or provided for herein or in the Bidding Procedures Order, including any reservation of rights included in such objections, are overruled on the merits with prejudice. To the extent of any inconsistency between this Sale Order and the Bidding Procedures Order, the terms of this Sale Order shall prevail.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

3.　　Pursuant to §§ 105(a), 363(b), 363(f), and 365, the Transaction, including the transfer and sale of the Purchased Assets to SCC on the terms set forth in the APA, is approved in all respects, and the Debtors are authorized and directed to consummate the Transaction in accordance with the APA, including, without limitation, by executing all of the Transaction Documents (and any ancillary documents or instruments that may be reasonably necessary or desirable to implement the APA or the Transaction) and taking all actions necessary and appropriate to effectuate and consummate the Transaction (including the transfer and sale of the Purchased Assets) in consideration of the Purchase Price (as defined in Section 1.1 of the APA) upon the terms set forth in the APA, including, without limitation, assuming and assigning to SCC the Designated Contracts. The Debtors and SCC shall have the right to make any mutually agreeable, non-material changes to the APA, which shall be in writing signed by both parties, without further order of the Court provided, that after reasonable notice, the Committee, the DIP Agent (as defined in the Final DIP Order defined below), and the Prepetition Secured Creditors, do not object to such changes. Any timely objection by the aforementioned parties to any agreed non-material changes to the APA may be resolved by the Court on shortened notice.

4.　　As of the Closing, (i) the Transaction set forth in the APA shall effect a legal, valid, enforceable and effective transfer and sale of the Purchased Assets to SCC free and clear of all Encumbrances, as further set forth in the APA and this Sale Order; and (ii) the APA, and the other Transaction Documents, and the Transaction, shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors, any successor thereto including a trustee or estate representative appointed in the Bankruptcy Cases, the Debtors' estates, all holders of any Claim(s) (as defined in the Bankruptcy Code) against the Debtors, whether known or unknown, any holders of Encumbrances on all or any portion of the Purchased Assets, all counterparties to the Designated Contracts and all other persons and entities.

5.　　Encumbrances in and to Purchased Assets shall attach (subject to any Challenge within the meaning of the Final DIP Order that has been, or may be, timely filed) to the Sale Proceeds of such Purchased Assets with each such Encumbrance having the same force, extent,

109891071\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

effect, validity and priority as such Encumbrance had on the Purchased Assets giving rise to the Sale Proceeds immediately prior to the Closing. For the avoidance of doubt, the foregoing force, extent, effect, validity and priority shall: (i) reflect the security interests, liens (including any Prepetition Replacement Liens arising for diminution of value, if any) and rights, powers and authorities that have been granted to the DIP Agent, the DIP Lender and to the Prepetition Secured Creditors, as applicable, pursuant to that certain *Final Order (I) Authorizing Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 409] (the "Final DIP Order"); and (ii) be subject to any Challenge within the meaning of the Final DIP Order that has been, or may be, timely filed. In addition, the Intercreditor Agreement (as defined in the Final DIP Order) shall apply with respect to the rights of the parties thereto in and to the Sale Proceeds and the Escrow Deposit Account, to the extent of and in accordance with its terms with all parties reserving all rights thereunder.

6. Subject to the fulfillment of the terms and conditions of the APA, this Sale Order shall, as of the Closing, be considered and constitute for all purposes a full and complete general assignment, conveyance, and transfer of the Purchased Assets and/or a bill of sale transferring all of the Debtors' rights, title and interest in and to the Purchased Assets to SCC. Consistent with, but not in limitation of the foregoing, each and every federal, state, and local governmental agency or department, except as stated herein, is hereby authorized and directed to accept all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and approved in this Sale Order. A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the appropriate recorder to cancel any Encumbrances of record.

7. Any person or entity that is currently, or on the Closing Date may be, in possession of some or all of the Purchased Assets is hereby directed to surrender possession of

109891071\V-2

such Purchased Assets either to (a) the Debtors before the Closing or (b) to SCC or its designee upon the Closing.

8.      The transfer of the Purchased Assets pursuant to the Transaction Documents shall be a legal, valid, and effective transfer and shall, in accordance with §§ 105(a) and 363(f), and upon consummation of the Transaction, including, without limitation, payment of the Purchase Price to the Debtors, vest SCC with all right, title, and interest in the Purchased Assets, free and clear of all Encumbrances. Upon closing of the Transaction, SCC shall take title to and possession of the Purchased Assets, subject only to the Assumed Obligations, as set forth in the APA. The transfer of the Purchased Assets from the Debtors to SCC constitutes a transfer for reasonable equivalent value and fair consideration under the Bankruptcy Code and the laws of the State of California.

9.      Following the Closing, no holder of any Encumbrance against the Debtors or upon the Purchased Assets shall interfere with SCC's respective rights in, title to or use and enjoyment of the Purchased Assets. All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Purchased Assets to SCC, including the assumption and assignment of the Designated Contracts.

10.     SCC shall not be deemed, as a result of any action taken in connection with, or as a result of the Transaction (including the transfer and sale of the Purchased Assets), to: (i) be a successor, continuation or alter ego (or other such similarly situated party) to the Debtors or their estates by reason of any theory of law or equity, including, without limitation, any bulk sales law, doctrine or theory of successor liability, or any theory or basis of liability regardless of source of origin; or (ii) have, *de facto* or otherwise, merged with or into the Debtors; or (iii) be a mere continuation, *alter ego*, or substantial continuation of the Debtors. Other than the Assumed Liabilities, SCC is not assuming any of the Debtors' debts.

11.     This Sale Order (i) shall be effective as a determination that, on Closing, all Encumbrances existing against the Purchased Assets before the Closing have been

109891071\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

unconditionally released, discharged and terminated, and that the transfers and conveyances described herein have been effected, and (ii) shall be binding upon and shall govern the acts of all persons and entities. If, following a reasonable written request made by the Debtors, any person or entity that has filed financing statements or other documents or agreements evidencing any Encumbrances against the Purchased Assets shall not have delivered to the Debtors for use at or in connection with Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances which the person or entity has with respect to the Purchased Assets, then SCC and/or the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to such Purchased Assets. For the avoidance of doubt, such statements, instruments, releases and other documents shall not impair Encumbrances that attach (subject to any Challenge within the meaning of the Final DIP Order that has been, or may be, timely filed) to the Sale Proceeds or the terms of this Order, including, but not limited to paragraphs 5 and 13 hereof.

12.    In accordance with the APA, concurrently with the Closing, SCC shall pay that portion of the Purchase Price due at Closing, by wire transfer of immediately available funds, to Debtors' Escrow Deposit Accounts (defined below), subject to the adjustments set forth in Section 1.1.1 of the APA. Any direct expenses of the Sale shall be disclosed by Debtors to the DIP Agent, the Prepetition Secured Creditors, and the Committee in advance of the Closing.

13.    The terms and conditions of the Final DIP Order shall apply with respect to the Sale Proceeds and Escrow Deposit Accounts (defined herein). Without limiting the foregoing, the Debtors shall comply with paragraph 4 of the Final DIP Order in the following manner:

(a)  the Debtors shall direct SCC and any post-closing escrow agent appointed pursuant to the terms of the APA to remit all Sale Proceeds to be received by the Debtors at Closing or thereafter in cash, to deposit such Sale Proceeds in separate accounts labeled "Santa Clara Sale Proceeds Account," in the name of each Debtor that is a Seller within the meaning of the APA (each such hereafter referred to as "Escrow Deposit Account");

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

(b) in giving direction to SCC pursuant to sub-paragraph (a), above, the Debtors shall exercise their reasonable business judgment, in good faith, and allocate the Sale Proceeds among the Escrow Deposit Accounts on the basis of the value of each Debtor's Purchased Assets as of the Closing (which allocation, for the avoidance of doubt, shall be subject to the reservations of rights in paragraph 4 of the Final DIP Order and footnote 5 of Exhibit 1 of the Bidding Procedures Order); provided further that nothing in this paragraph shall waive or limit any rights the Committee may have in connection with the confirmation of a proposed chapter 11 plan for any of the Debtors' cases (including the right to seek to reallocate estate values);

(c) without limitation of the rights of the DIP Agent and DIP Lender under the DIP Financing Agreements and the Final DIP Order, no funds held in any Escrow Deposit Account shall be (i) commingled with any other funds of the applicable Debtor or any of the other Debtors or (ii) used by the Debtors for any purpose, except as provided in this Order, the DIP Credit Agreements or Final DIP Order without further order of this Court, after reasonable notice under the circumstances to the DIP Agent, the Prepetition Secured Creditors and the Committee;

(d) each Escrow Deposit Account shall be subject to a deposit account control agreement in favor of the DIP Agent and DIP Lender, and subject to, without limitation of the rights of the DIP Agent and DIP Lender under the DIP Financing Agreements and the Final DIP Order with respect to the Sale Proceeds and Escrow Deposit Account, including, without limitation, following the occurrence of an Event of Default or the Revolving Loan Termination Date (as defined in the DIP Credit Agreement), the Debtors shall not be permitted to use the funds held in any Escrow Deposit Account for any purpose, except as provided in paragraph 14, 15, 16, and 17 of this Order, and to fund any Purchase Price adjustment in favor of the Purchaser, without first obtaining the consent of the DIP Agent, DIP Lender and the Prepetition Secured Creditors or obtaining an order of the Court pursuant to §§ 363 or 1129 after reasonable notice under the circumstances to the DIP Agent, the DIP Lender, the Prepetition Secured Creditors and the Committee and, if necessary, a hearing thereon.

109891071\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

14.     Concurrently with the Closing or as soon thereafter as is possible, and in accordance with the APA, the Debtors (i.e., the Hospital Debtors defined in the APA) shall pay out of the Sale Proceeds to the counter-parties to the Designated Contracts the cure amounts set forth in the *Debtors' Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May Be Assumed and Assigned* [Docket No. 810], the *Supplement to Notice to Counterparties to Executory Contracts and Unexpired Leases of the Debtors That May be Assumed and Assigned* [Docket No. 998], the *Amended Notice of Contracts Designated by Santa Clara County for Assumption and Assignment* [Docket No. 1110] (collectively, the "Cure Notices"), or as otherwise agreed to by the Debtors, SCC and the applicable counter-parties thereto or ordered by this Court after a continued hearing on the Cure Objections (the "Designated Cure Amounts").

15.     To the extent that any of the contracts and/or leases, which give rise to the Designated Cure Amounts and are set forth in the *Amended Notice of Contracts Designated by Santa Clara County for Assumption and Assignment* [Docket No. 1110] (the "Currently Identified Designated Contracts") are executory contracts or unexpired leases (over which the Court is not making any such determination at this time), then in connection with the Closing, the Debtors shall be deemed to have assumed all such Currently Identified Designated Contracts (so that they are deemed part of the Designated Contracts) and to have assigned them to SCC, and SCC shall have assumed all obligations owing under all such Currently Identified Designated Contracts arising after and following the Closing.  In the event that the Court ultimately determines that any such counter-parties to the Currently Identified Designated Contracts (the "Currently Identified Designated Contract Counter-Parties") have an allowed claim against the Debtors which exceeds the Designated Cure Amounts, the difference will be paid by the Debtors out of the Sale Proceeds and shall not be the responsibility of SCC. The Court shall resolve any and all disputes which may arise between the Debtors, SCC and any of the Currently Identified Designated Contract Counter-Parties over whether the Currently Identified Designated Contracts are executory contracts or unexpired leases and whether any of the Currently Identified Designated Contract

109891071\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Counter-Parties are entitled to an allowed claim against the Debtors which exceeds the Designated Cure Amounts.

16. All of the Currently Identified Designated Contracts, to the extent they are executory contracts or unexpired leases, shall be part of the Designated Contracts that will be assumed by the Debtors and assigned to SCC at the Closing. In the event that SCC elects to add any other of the Debtors' executory contracts or unexpired leases to the list of Designated Contracts (the "Subsequently Identified Designated Contracts"), the Debtors shall (i) file a notice with the Court, by January 23, 2019, identifying all such Subsequently Identified Designated Contracts and their respective cure amounts, and (ii) serve such notice by over-night mail on all counter-parties to the Subsequently Identified Designated Contracts (the "Subsequently Identified Designated Contract Counter-Parties"). All Subsequently Identified Designated Contracts shall be assumed by the Debtors and assigned to SCC at the Closing, with the Debtors to be obligated to pay all cure amounts owing to such Subsequently Identified Designated Contract Counter-Parties concurrently with the Closing, as set forth in the Debtors' notice, or as otherwise agreed to by the Debtors, SCC and the applicable counter-parties thereto, or ordered by the Court in accordance with paragraph 36 below (the "Additional Cure Amounts").

17. Upon the Closing, the Debtors are authorized and directed to assume, assign and/or transfer each of the Designated Contracts to SCC, including the Currently Identified Designated Contracts and any Subsequently Identified Designated Contracts (all counterparties to the Currently Identified Designated Contracts and any Subsequently Identified Designated Contracts collectively, the "Contract Counter-Parties"). At the Closing, the Debtors shall pay out of the Sale Proceeds (i) to the Designated Cure Amounts identified in paragraph 14 above, and (ii) the Additional Cure Amounts. Payment by the Debtors of such Designated Cure Amounts and Additional Cure Amounts are deemed the necessary and sufficient amounts to "cure" all "defaults" with respect to all such Currently Identified Designated Contracts and Subsequently Identified Designated Contracts under § 365(b). The payment by the Debtors shall (i) effect a cure of all defaults existing under all such Currently Identified Designated Contracts, and (ii) compensate all such Contract Counter-Parties for any actual

pecuniary loss resulting from any such default.  The Debtors shall then have assumed and assigned to SCC, effective as of the Closing, all of the Designated Contracts (comprised of both all Currently Identified Designated Contracts and all Subsequently Identified Designated Contracts, if any), and, pursuant to § 365(f), the assignment by the Debtors of all such Designated Contracts to SCC shall not be a default thereunder. After the payment of the Designated Cure Amounts and the Additional Cure Amounts by the Debtors, neither the Debtors nor SCC shall have any further liabilities to any Contract Counter-Parties, other than SCC's obligations under the Designated Contracts that accrue and become due and payable after the Closing Date.  In addition, adequate assurance of future performance has been demonstrated by or on behalf of SCC with respect to all of the Designated Contracts within the meaning of §§ 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B). For the avoidance of doubt, the Debtors shall be liable for the payment of all cure costs with respect to the Designated Contracts as may be required under § 365(b)(1).  SCC shall not be liable for the payment of any cure costs with respect to the Designated Contracts as may be required under § 365(b)(1) or for the payment of any liabilities or obligations arising from or related to (a) such Designated Contracts on or prior to the Closing of the Transaction, (b) any executory contracts which the Debtors intend to reject by appropriate motion at a later date and which are not being assumed and assigned to SCC as part of the Transaction, (c) any prepetition multiparty contract affecting more than one Debtor in addition to OCH and/or SLRH, or (d) any collective bargaining agreement, pension plan, or health and welfare plan providing collectively bargained benefits to which OCH and/or SLRH is a party or sponsor.

18.     The Debtors intend to reject, pursuant to § 365(a), all executory contracts to which OCH and SLRH are a party, excluding (i)  Designated Contracts, (ii) any prepetition multiparty contract affecting more than one Debtor in addition to  OCH and/or SLRH, and (iii) any collective bargaining agreement, pension plan or health and welfare plan providing collectively bargained benefits  to which OCH and/or  SLRH is a party  or sponsor.  The Debtors shall file an appropriate motion to reject such contracts prior to Closing.  Notwithstanding the prior statement, Closing is conditioned upon the rejection, termination and/or modification of all applicable CBAs

109891071\V-2

related to OCH and SLRH, pursuant to § 1113 or as otherwise agreed to between the Debtors, the respective unions, and as approved by the Court.

19.     All of the Contract Counter-Parties are forever barred, estopped, and permanently enjoined from (i) raising or asserting against the Debtors or SCC, or any of their property, any assignment fee, acceleration, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Designated Contracts, existing as of the Closing, or arising by reason of the consummation of the Transaction contemplated by the APA, including, without limitation, the Transaction and the assumption and assignment of the Designated Contracts, including any asserted breach relating to or arising out of the change-in-control provisions in such Designated Contracts, or any purported written or oral modification to the Designated Contracts and (ii) asserting against SCC any claim, counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the Closing or arising by reason of the transfer of the Purchased Assets, except for the Assumed Obligations.

20.     Any provisions in any Designated Contracts that prohibit or condition the assignment of such Designated Contract or allow the counterparty to such Designated Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Designated Contract constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Designated Contract to SCC in accordance with the APA, pursuant to § 363(f). Notwithstanding the foregoing, the rights of Contract Counter-Parties to assert that a Designated Contract may not be assumed and assigned absent consent, on the ground that such Designated Contract pertains to the licensing of intellectual property, are preserved, and any such objections may be asserted in accordance with the procedures set forth in paragraphs 34, 35, and 36; provided, however, that any Contract Counter-Party that has failed to object within the deadlines set forth in the applicable Cure Notice is now forever barred from asserting its objection.

21.     The terms and provisions of this Sale Order, as well as the rights granted under the Transaction Documents, shall continue in full force and effect and are binding upon any successor,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

reorganized Debtors, or chapter 7 or chapter 11 trustee applicable to the Debtors, notwithstanding any such conversion, dismissal or order entry. Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or in any order confirming such a plan, nor any order dismissing the cases or converting the cases to a case under chapter 7, shall conflict with or derogate from the provisions of the APA, any documents or instruments executed in connection therewith, or the terms of this Sale Order, provided however, that in the event of a conflict between this Sale Order and an express or implied provision of the APA, this Sale Order shall govern. The provisions of this Sale Order and any actions taken pursuant hereto shall survive any conversion or dismissal of the cases and the entry of any other order that may be entered in the cases, including any order (i) confirming any plan of reorganization; (ii) converting the cases from chapter 11 to chapter 7; (iii) appointing a trustee or examiner in the cases; or (iv) dismissing the cases.

22.     The Transaction contemplated by the APA and other Transaction Documents are undertaken without collusion and in "good faith," as that term is defined in § 363(m) of the Bankruptcy Code. SCC is a good faith purchaser within the meaning of § 363(m) and, as such, is entitled to the full protections of § 363(m). Accordingly, the reversal or modification on appeal of the authorization provided herein by this Sale Order to consummate the Transaction shall not affect the validity of the sale of the Purchased Assets to SCC. The APA and the Transactions contemplated thereby cannot be avoided under § 363(n).

23.     The failure to specifically include any particular provision of the APA or the other Transaction Documents in this Sale Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Bankruptcy Court that the Transaction, the APA and the other Transaction Documents be authorized and approved in their entirety. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

24.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Rules 6004(h), 6006(d), 7062, or 9014, if applicable, or any other LBR or otherwise, this Sale Order shall not be stayed for 14-days after the entry hereof, but shall be effective

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

and enforceable immediately upon entry pursuant to Rule 6004(h) and 6006(d). Time is of the essence in approving the Transaction (including the transfer and the sale of the Purchased Assets).

25.     The automatic stay in effect pursuant to § 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court, to (i) allow SCC to deliver any notice provided for in the APA and Transaction Documents and (ii) allow SCC to take any and all actions permitted under the APA and Transaction Documents in accordance with the terms and conditions thereof.

26.     Unless otherwise provided in this Sale Order, to the extent any inconsistency exists between the provisions of the APA and this Sale Order, the provisions contained in this Sale Order shall govern.

27.     This Court shall retain exclusive jurisdiction to interpret, construe, and enforce the provisions of the APA and this Sale Order in all respects, and further, including, without limitation, to (i) hear and determine all disputes between the Debtors and/or SCC, as the case may be, and any other non-Debtor party to, among other things, the Designated Contracts concerning, among other things, assignment thereof by the Debtors to SCC and any dispute between SCC and the Debtors as to their respective obligations with respect to any asset, liability, or claim arising hereunder; (ii) compel delivery of the Purchased Assets to SCC free and clear of Encumbrances; (iii) compel the delivery of the Purchase Price or performance of other obligations owed to the Debtors; (iv) interpret, implement, and enforce the provisions of this Sale Order; and (v) protect SCC against (A) claims made related to any of the Excluded Liabilities (as defined in the APA), (B) any claims of successor or vicarious liability (or similar claims or theories) related to the Purchased Assets or the Designated Contracts, or (C) any Encumbrances asserted on or against SCC or the Purchased Assets.

28.     Following the date of entry of this Sale Order, the Debtors and SCC are authorized to make changes to the APA without the need for any further order of the Court provided that all such changes have been approved in writing by the Debtors, SCC, the Committee, the DIP Agent, and Prepetition Secured Creditors.  Any other changes to the APA or this Sale Order require a further order of the Court, after reasonable notice under the circumstances and a hearing.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

29.     Notwithstanding any other provision of this Sale Order or any other Order of this Court, no sale, transfer or assignment of any rights and interests of a regulated entity in any federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such sale, transfer or assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder. The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such sales, transfers and assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent not inconsistent with the applicable provisions of the Bankruptcy Code.

30.     To the extent the Purchased Assets contain records of the Verity Health System Retirement Plan A and Verity Health System Retirement Plan B (collectively, the "Pension Plans") or employment records of participants of the Pension Plans, the SCC shall store, and preserve any such records until the PBGC has completed its investigation regarding the Pension Plans and shall make such documents available to the PBGC for inspection and copying.  Such records include, but are not limited to, any Pension Plan governing documents, actuarial documents, and employment records (collectively, the "Pension Plan Documents").  The Debtors shall retain and not abandon any Pension Plan Documents that are not Purchased Assets for not less than twelve (12) months after Closing and shall make such documents available to the PBGC for inspection and copying.

31.     No later than January 18, 2019, either (i) the Debtors will file a notice of a resolution of the issues regarding the transfer and/or proposed assumption and assignment or rejection of the Medi-Cal Provider Agreements or (b) DHCS will file a supplemental objection to the proposed transfer of the Medi-Cal Provider Agreements.  If necessary, the Debtors will file any reply to the supplemental objection no later than 4:00 p.m. (Pacific Time), on January 25, 2019, and a hearing will be held on the issues raised regarding the transfer and/or proposed assumption and assignment or rejection of the Medi-Cal Provider Agreements on January 30, 2019, at 10:00 a.m. (Pacific Time); and all parties' rights, claims, and defenses are preserved until that hearing.  Nothing in this Sale Order shall apply to

109891071\V-2

Medi-Cal Provider Agreements until and unless there is a Court order approving a settlement between the Debtors and the DHCS or a Court order resolving the DHCS's objections.

32. No later than January 18, 2019, either (i) the Debtors will file a notice of a resolution of the issues regarding the transfer and/or proposed assumption and assignment or rejection of the Medicare Provider Agreements or (b) HHS will file a supplemental objection to the proposed transfer of the Medicare Provider Agreements. If necessary, the Debtors will file any reply to the supplemental objection no later than 4:00 p.m. (Pacific Time), on January 25, 2019, and a hearing will be held on the issues raised regarding the transfer and/or proposed assumption and assignment or rejection of the Medicare Provider Agreements on January 30, 2019, at 10:00 a.m. (Pacific Time); and all parties' rights, claims, and defenses are preserved until that hearing. Nothing in this Sale Order shall apply to Medicare Provider Agreements until and unless there is a Court order approving a settlement between the Debtors and the HHS or a Court order resolving the HHS's objections.

33. The Debtors must have resolution of the collective bargaining agreements (the "CBAs") that cover employees at Saint Louise Regional Hospital and O'Connor Hospital prior to SCC closing on the proposed Sale pursuant to the APA. The hearing on the Debtors' motion(s) with respect to the rejection and/or modification of such CBAs (the "CBA Motions") will occur on January 30, 2019, at 10:00 a.m. (Pacific Time). Debtors shall file the CBA Motions by no later than January 2, 2019. Any objection to the CBA Motions shall be filed on January 16, 2019, and any reply shall be filed on January 23, 2019.

34. A continued hearing on the Cure Objections shall be held on January 30, 2019, at 10:00 a.m. (Pacific Time). As to the Currently Identified Designated Contracts, by no later than Friday, January 18, 2019, the Debtors shall file a notice containing a list of (a) the Cure Objections that have been resolved, and (b) the Cure Objections as to which Court intervention is required. As to the Cure Objections for which Court intervention is required, the following briefing schedule shall apply: (2) (1) the Debtors' opposition to each outstanding Cure Objection shall be submitted by no later than Friday, January 18, 2019; and (3) (2) the counterparties' reply in support of its Cure Objections shall be submitted by no later than Friday, January 25, 2019. Nothing in this Sale Order constitutes a finding or

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

109891071\V-2

determination on any Cure Objection.  All Cure Objections are preserved until resolved either by agreement between the Debtors and the contract counterparty or further order of the Court.

35.     As to any executory contracts or unexpired leases that were listed on the Initial Designated Contract List, but not listed on any prior Cure Notices, any counterparty thereto may file an objection to the cure amount or assumption thereof by January 11, 2019, and all other provisions in paragraph 34 shall apply to resolution thereof.

36.     As to Subsequently Identified Designated Contracts, (i) the Debtors shall file a notice with the Court, by January 23, 2019, identifying all Subsequently Identified Designated Contracts and provide service thereof in accordance with paragraph 16, and (ii) to the extent that any Subsequently Identified Designated Contracts were not listed on any of the prior Cure Notices, counterparties subject to contracts who object to assumption and/or the proposed cure amounts must file an objection no later than January 30, 2019, and any reply shall be filed on February 6, 2019. The request by Medical Office Building of California LLC for an extension of the January 30, 2019 objection deadline in the event that its lease is designated as a Subsequently Identified Designated Contract is overruled. To the extent that a negotiated resolution cannot be achieved, any objections filed in connection with the Subsequently Identified Designated Contracts shall be adjudicated on February 13, 2018, at 10:00 a.m. (Pacific Time), where the Court shall resolve any and all disputed issues related to the objection.

37.     The Committee's and the Prepetition Secured Creditors' rights, and their ability to participate and be heard at the hearings described in paragraphs 31-36 of this Sale Order, are hereby reserved.  To the extent that the DIP Agent, DIP Lender, Prepetition Secured Creditors or the Committee desire to file pleadings related to such hearings, their respective times for filing an objection or response to any of the requests for relief described in paragraphs 31-36 herein shall be the same as granted to the Debtors pursuant to the notice in each such instance.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 23 -

109891071\V-2

**IT IS SO ORDERED.**

### 

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Date: December 27, 2018

Ernest M. Robles
United States Bankruptcy Judge

109891071\V-2